Filed 3/30/23  In re D.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.A., Jr., a Person Coming Under the Juvenile Court Law. | |
| | D081298 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518811B) |
| v. | |
| D.A. (Father), | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis, Judge.  Conditionally reversed and remanded with directions.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

Defendant and appellant D.A. (Father) appeals from an order issued at a Welfare and Institutions Code[1] section 366.21 six-month review hearing in the section 300 dependency proceedings pertaining to his son D.A., Jr. Father argues the San Diego County Health and Human Services Agency (Agency) failed to comply with its initial inquiry obligations under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and Welfare and Institutions Code section 224.2, and the juvenile court failed to ensure the Agency did so. The Agency concedes that its ICWA inquiry was deficient and agrees a conditional reversal with a limited remand is appropriate in this case. Father and the Agency have submitted a joint stipulation for issuance of an immediate remittitur pursuant to California Rules of Court, rule 8.272(c)(1). We conditionally reverse the order and remand for the limited purpose of ensuring compliance with ICWA and section 224.2.

FACTUAL AND PROCEDURAL BACKGROUND

On November 11, 2021, law enforcement responded to a call reporting that D.A., Jr., who was one year old at the time, was left unattended in a car with the doors unlocked and unrestrained in his car seat. While officers were on scene, Father arrived and could not explain why he left D.A., Jr., unattended. Officers found a glass methamphetamine pipe in Father's pocket and arrested him for drug paraphernalia and child endangerment.

---

[1] All further section references are to the Welfare and Institutions Code, unless otherwise indicated.

D.A., Jr., was transported to a hospital where he tested positive for methamphetamine and fentanyl. D.A., Jr.'s mother (Mother)[2] arrived at the hospital and D.A., Jr., was medically cleared, however, Mother was not given custody of him because she lived in the same household as Father and had a misdemeanor warrant for drug charges. Father admitted to ongoing use of methamphetamine, which Mother was aware of but nonetheless allowed him to care for D.A., Jr.

The Agency filed a dependency proceeding on behalf of D.A., Jr., under section 300, subdivision (b). In its detention report filed on November 16, 2021, the Agency reported that D.A., Jr., was at Polinsky Children's Center.

The Agency reported that both Father and Mother denied having any Indian ancestry.

During the course of its investigation, the Agency spoke with maternal grandmother several times, however, there is no indication that the Agency asked her about D.A. Jr.'s potential Indian ancestry. Maternal grandmother informed the Agency that maternal uncle J.C. lived with her. The Agency attempted to contact maternal uncle J.C. by telephone in December 2021, however, he did not answer the Agency's call. Mother also informed the Agency of another maternal uncle and a maternal aunt.

Father informed the Agency that both paternal grandparents lived in San Diego. Father denied having any siblings. During the course of its investigation, the Agency spoke with paternal great-aunt, however, there is no indication that the Agency asked her about D.A., Jr.'s potential Indian ancestry.

The court found without prejudice that ICWA did not apply to the proceedings at the January 18, 2022 pretrial status conference in advance of

___

2      Mother is not a party to this appeal.

the jurisdiction and disposition hearing, and at the January 28, 2022 contested jurisdiction and disposition hearing.

At the six-month review hearing on November 28, 2022, the court again found without prejudice that ICWA did not apply. Father appealed from this order.

## DISCUSSION

Father argues the Agency failed to comply with its initial inquiry duties under section 224.2, subdivision (b) because it neglected to interview extended family members about D.A., Jr.'s possible Indian ancestry. As the Agency concedes, we conclude the Agency failed to comply with its initial ICWA inquiry obligations and substantial evidence therefore does not support the court's ICWA finding. As such, we conditionally reverse the juvenile court's order and remand for the limited purpose of ensuring ICWA compliance.

### A. Applicable Law

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.*, at p. 9.) An " 'Indian child' " is defined under California law in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); accord § 224.1, subd. (a) [adopting the federal definition].)

4

As outlined by this court in *In re D.S.* (2020) 46 Cal.App.5th 1041 (*In re D.S.*), "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings." (*Id.* at p. 1052.) First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of initial inquiry, including but not limited to asking the reporting party whether the child may be an Indian child. (§ 224.2, subds. (a).) "If [the] child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307," this initial inquiry duty includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)[3]

---

[3] Section 306, subdivision (a)(1) provides that a county welfare department may receive and maintain temporary custody of a child who is described in section 300 and who has been delivered by a peace officer. Section 306, subdivision (a)(2) provides that a county welfare department may take into and maintain temporary custody of, without a warrant, a child who has been declared a dependent under section 300, or who the social worker has reasonable cause to believe is a person described in section 300, subdivision (b) or (g), and the social worker has reasonable cause to believe the child has an immediate need for medical care, or is in immediate danger of physical or sexual abuse, or the physical environment poses an immediate threat to the child's health or safety. The record here does not definitively show whether the Agency took temporary custody of D.A., Jr., pursuant to section 306. If it did not, then the Agency's duty to question extended family members imposed by section 224.2, subdivision (b) arguably was not triggered. (See *In re Adrian L.* (2022) 86 Cal.App.5th 342, 355-359 (conc. opn. of Kelley, J.).) Because the record is not clear on the matter and the parties have not raised the issue, we assume without deciding that the Agency took temporary custody of D.A., Jr., pursuant to section 306 and therefore had a duty to question his extended family members about his Indian ancestry.

5

"Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' ([§ 224.2], subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S., supra*, 46 Cal.App.5th at p. 1052.)

ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*In re D.S., supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid.*)

### B. Analysis

Father argues the Agency failed to satisfy its initial inquiry obligations because the Agency failed to ask any extended family members about D.A., Jr.'s potential Indian ancestry. Specifically, Father contends maternal grandmother and paternal great-aunt were involved in the dependency proceedings and were in contact with the Agency. Father also argues that during the course of the Agency's investigation, he identified the paternal grandparents, and Mother identified a maternal aunt and two maternal uncles, however, the Agency made no effort to contact these family members to conduct an ICWA inquiry.

6

The Agency concedes it had contact information for and spoke with maternal grandmother and paternal great-aunt. The Agency also concedes it should have followed up on its effort to contact maternal uncle J.C., who lived with maternal grandmother. Finally, the Agency concedes it could have asked maternal grandmother or Mother for contact information for the other maternal uncle and maternal aunt, and it could have asked Father for contact information for paternal grandparents.

In its initial inquiry, the Agency is not obligated to conduct an ICWA inquiry of all family members—only those who qualify as " 'extended family member[s]' " as defined under ICWA. (See 25 U.S.C. § 1903(2); § 224.1, subd. (c).) Additionally, the Agency "is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S., supra,* 46 Cal.App.5th at p. 1053.)

Based on our review of the record, we agree the Agency failed to satisfy its initial inquiry obligation because it had contact with but did not conduct an ICWA inquiry of maternal grandmother, who qualifies as an "extended family member." A great-aunt does not qualify as an "extended family member" as defined under ICWA; therefore, the Agency was not required to conduct an ICWA inquiry of paternal great-aunt. To the extent the Agency is able to make contact with maternal uncles, maternal aunt, and/or paternal grandparents, who all qualify as "extended family members," the Agency should ask them about D.A., Jr.'s potential Indian ancestry on remand.

DISPOSITION

The order issued at the November 28, 2022, contested section 366.21 hearing is conditionally reversed and the matter is remanded to the juvenile court with directions that within 30 days of the remittitur the Agency must file a report demonstrating its compliance with the inquiry provisions of

7

ICWA and section 224.2, subdivision (b). Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine if the Agency's investigation satisfied its affirmative duty to investigate. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If after investigation neither the Agency nor the juvenile court has reason to believe or to know D.A., Jr., is an Indian child, the November 28, 2022 order shall be reinstated. Alternatively, if after completing the inquiry, the Agency or the juvenile court has reason to believe or to know D.A., Jr., is an Indian child, the juvenile court shall proceed in conformity with ICWA and related California law. The remittitur shall issue immediately.


IRION, Acting P. J.

WE CONCUR:

DATO, J.

BUCHANAN, J.

8